**LOUISIANA STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF EDUCATION, Respondent.**

No. 88–4802.

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1989.

R. Bruce Macmurdo, Steffes & Macmurdo, Baton Rouge, La., for petitioner.

Jeffrey B. Rosen, General Counsel, Dept. of Educ., Washington, D.C., for respondent.

Before CLARK, Chief Judge, JOHNSON and SMITH, Circuit Judges.

CLARK, Chief Judge:

The Louisiana State Board of Elementary and Secondary Education appeals from an order of the United States Department of Education requiring the Louisiana agency to refund over $700,000 the State of Louisiana received under the Education of the Handicapped Act. We affirm.

A brief political history note will provide the background needed to understand how this controversy arose. Prior to 1974, public education in Louisiana was under the near total control of the Superintendent of Education, a state-wide elected post which governs the Louisiana State Department of Education. That year an amendment to the state constitution created the Board of Elementary and Secondary Education (BESE), which was to assume most of the powers of the superintendent. The superintendent's office, however, was not abolished, and power conflicts between the BESE and the superintendent became commonplace. These conflicts between independent agencies exercising a common jurisdiction have been settled by the abolishment in 1988 of the office of superintendent. This litigation resulted from conflict occurring prior to the abolition of the superintendent's office.

The BESE and the superintendent jointly applied to the United States Department of Education (ED) for funds under the Education of the Handicapped Act. 20 U.S.C. § 1411, *et seq.* The application was accepted by the ED, and funds were disbursed. According to the ED's then existing practice, payment was made directly to the superintendent.

After the superintendent received the funds, the BESE learned that he intended to spend the grant funds on projects the BESE did not believe fulfilled the requirements of the federal grant. An independent committee created to oversee the project concurred with the BESE. Concerned over this perceived misapplication of funds, the BESE contacted the ED by letter to express their concern. After outlining the alleged misexpenditures, the BESE's legal counsel wrote, in part:

The Board of Elementary and Secondary Education is of course very concerned about this action taken by the Superintendent and his employees in the Department of Education since the Board is the responsible agent for the expenditure of the 94–142 funds. It was my feeling that the Department of Education, United States Government, should first be notified of this problem before we attempted to take any actions at the state level since it is the U.S. Department of Education to which we are responsible for the funds.

. . . .

Please call me concerning this matter as I can give you the names of people who have further knowledge of relevant events. There is quite a lot of controversy brewing in Louisiana regarding this situation and your prompt attention will be appreciated.

The ED responded that it could not cease payments or take other action until after an audit and reasonable notice to the state agencies involved.

The ED's audit was not completed until after all the funds under the grant had been paid. The audit uncovered the discrepancies cited by the BESE. The ED then ordered the BESE to refund the monies, over $700,000. The BESE objected that they had not received the funds and thus they were not responsible. The Education Appeal Board affirmed the initial decision that the BESE refund the spent funds, and the BESE now appeals to this court. The ED's decision must be affirmed if "the findings of [the agency] are supported by substantial evidence and reflect application of proper legal standards." *Bell v. New Jersey*, 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983). In addition, the agency's interpretation of its own regulations is entitled to deference. *Udall v. Tallman*, 380 U.S. 1, 6, 85 S.Ct. 792, 796, 13 L.Ed.2d 616 (1965).

The BESE argues that the ED can legally recover misspent funds only from the recipient, that the ED is estopped from collecting from the BESE by its inaction after BESE's warnings, and that equitable

considerations justify reducing or suspending the refund. The BESE does not challenge the ED's determination that the funds were improperly utilized. We affirm the agency's decision.

Under the applicable regulations, the ED can recover misused funds only from the recipient. "Recipient" is defined as the "named party that initially receives federal funds under an ED grant or cooperative agreement. For example, for a state-administered program conducted under Title I of the Elementary and Secondary Education Act of 1965, as amended, the SEA [State Educational Agency] is the recipient." 34 CFR § 78.3c. The BESE argues that it did not receive the funds, and therefore, was not a "recipient." The ED's interpretation of its regulation, however, is broader. The ED argues that the BESE was the State Education Agency and is therefore the recipient.

■ The ED's decision that the BESE was a recipient is supported by substantial evidence. According to Louisiana law and the grant application, the BESE was the State Educational Agency, the party responsible for overseeing the funds, while the superintendent was responsible for administering the funds. Louisiana law provided:

> The [BESE] is hereby designated as the State Educational Agency with respect to federal funds for those programs under the jurisdiction of the [BESE]. The State Department of Education shall administer and distribute all federal funds received for the benefit of those phases of education under the jurisdiction of the [BESE].

La.R.S. 17:24(C).

The BESE acknowledges that it was the State Educational Agency responsible for overseeing the funds. It recognized its responsibility for the funds in its letter to the ED concerning the misappropriations. That letter also indicated the BESE was acting to fulfill its responsibility. The agency's interpretation of its regulations is also reasonable. Federal law provides that the "State education agency shall be responsible for assuring that ... all edu-

cational programs for handicapped children within the State, including all such programs administered by any other State or local agency ... shall meet education standards of the State educational agency." 20 U.S.C. § 1412(6). The BESE jointly applied for the funds as the State Education Agency and accepted the responsibility for assuring that the grant funds were properly administered by the superintendent. Payment to the superintendent, the other applicant, was justified by state law, the application itself, and prior practice. The ED properly called on the BESE to refund the misspent grant funds. Regardless of whether the BESE or the superintendent was required to refund, the money would come from the coffers of the State of Louisiana.

■ The BESE also argues that it fulfilled its duties as the State Education Agency by informing the ED of the alleged discrepancies. The ED, it argues, is estopped from now collecting the grant funds by its inaction to the BESE warnings. On appeal, the BESE contends that the ED should have immediately stopped payment of funds to the superintendent after its letter warning of possible misexpenditures. We need not reach the legal questions of whether the ED can be estopped from ordering a refund through inaction or whether it had the power to stop payment of the grant without an audit and due process proceedings because the clear factual record provides no support for the BESE's argument. *See Tangipahoa v. Department of Education,* 821 F.2d 1022 (5th Cir.1987).

The BESE warning to the ED regarding the grant did not request that payment to the superintendent be stopped or diverted to BESE, immediately or in the future. The letter merely notified the ED of what BESE perceived to be an intrastate problem concerning which BESE was the "responsible agent." The letter also stated: "It was my feeling that the Department of Education, United States Government, should first be notified of this problem before we attempted to take any actions at the state level since it is the U.S. Depart-

ment of Education to which we are responsible for the funds."

Even had the state agency requested that the ED act immediately without an audit, the letter would have provided no justification for such action. To the contrary, the letter suggested a political controversy at the state level: "There is quite a lot of controversy brewing in Louisiana regarding this situation...." The ED was not required to become involved in a struggle between two state agencies. Assuming estoppel would lie, the proof in the record demonstrates no basis for it. The ED acted prudently in auditing the superintendent's expenditures. The record contains no indication of what percentage of funds had already been disbursed under the grant when the ED was notified of possible discrepancies.

■ Finally, the BESE argues that equitable considerations warrant a reduction or suspension of the refund. Under the doctrine established in *Tangipahoa*, the ED is required to consider equitable factors that might mitigate the need for a full refund. 821 F.2d at 1030-31. The final decision of the Appeals Board contains a detailed analysis of the equitable factors related to the ordered refund. That decision determined that the BESE was not equitably excused. We have no power to disturb their determination on this ground. *Tangipahoa* mandated that the agency consider such factors, but it supplies no warrant to this court to review an agency's equitable determinations. As the Supreme Court has instructed, "Where the Secretary [of the ED] has properly concluded that funds were misused under the legal standards in effect when the grants were made, a reviewing court has no independent authority to excuse repayment based on its view of what would be the most equitable outcome." *Bennett v. New Jersey*, 470 U.S. 632, 646, 105 S.Ct. 1555, 1563, 84 L.Ed.2d 572 (1985).

The decision and order of the Education Appeals Board is

AFFIRMED.